HAROLD TRAVIS LYONS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 18503

June 1, 1989                                    775 P.2d 219

*Terri Steik Roeser,* State Public Defender, and *Jeffrey M. Evans,* Deputy, Carson City, for Appellant.

*Brian McKay,* Attorney General, Carson City, and *Brent T. Kolvet,* District Attorney, and *Michael P. Gibbons,* Deputy, Douglas County, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

This appeal raises the issue of whether the State may induce an accused to plead guilty to a non-committed crime by unwittingly convincing the accused that the non-criminal conduct for which he was arrested constituted a criminal offense. The issue, thus stated, represents an accurate but somewhat convoluted distillate of appellant's complaint. It also explains why appellant's conviction must be reversed.

Lyons who is no stranger to the criminal justice system in general and to gaming crimes in particular, was charged with cheating at gambling, conspiracy to cheat at gambling,[1] and being

---

[1]The conspiracy charge was dismissed at the preliminary hearing.

an habitual criminal. The underlying conduct leading to Lyons' arrest involved what has come to be known as "handle popping" a slot machine. The term refers to a process of handle manipulation that enables a player to exploit mechanically vulnerable slot machines.

Lyons was apprehended as a result of his handle popping activities at Harrah's Tahoe Casino. Subsequent to his preliminary hearing, Lyons assented to a plea bargain that allowed him to enter an *Alford*[2] plea to the non-committed crime of attempting to obtain money by false pretenses. The original charges were dropped in exchange for entry of the plea.

Lyons raises four issues on appeal, only one of which requires discussion because it is dispositive of the entire manner.

Before discussing the dispositive substantive issue, it is necessary to address a threshold procedural problem implicated by our decision in Bryant v. State, 102 Nev. 268, 721 P.2d 364 (1986). Lyons has not challenged the validity of his quilty plea in the district court. In *Bryant,* we determined that we would no longer entertain initial challenges to the validity of guilty pleas on direct appeal from judgments of conviction; in lieu thereof, a defendant must raise the challenge first in the district court by either a motion to withdraw the plea or a petition for post-conviction relief pursuant to NRS 34.360 or NRS 177.315. *See Bryant,* 102 Nev. at 272, 721 P.2d at 367-368. We do not now recede from our position in *Bryant.* However, there are compelling reasons for treating the instant appeal as an exception to our ruling in *Bryant.*

The usual challenges to the validity of guilty pleas stem from allegations of infirmity in the plea canvas, ineffective assistance of counsel or some form of coercion in the bargaining process. Ordinarily, the district court is in the best position to determine whether facts and circumstances exist that warrant relief from the effects of a plea. Moreover, if the district court grants a request for plea withdrawal, the State is usually in a position to proceed with the prosecution. In the instant case, we are no less able to consider the validity of the underpinnings of the plea than the district court. Additionally, because of the unique circumstances that compel our intervention, no basis for further prosecution under the original charges exists. We therefore conclude that despite Lyons' failure to challenge the validity of his guilty plea before the district court, he will be permitted to do so via this appeal from his judgment of conviction. In so ruling, we satisfy the demands of judicial economy and basic fairness.

---

[2]North Carolina v. Alford, 400 U.S. 25 (1970).

Turning to the paramount substantive issue, Lyons contends that NRS 465.015, which defines cheating at gambling, is unconstitutionally vague as applied to slot machine handle manipulation. We are convinced that he is correct. In United States v. Harriss, 347 U.S. 612, 617 (1954), the United States Supreme Court declared:

> The Constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. (Footnote omitted.)

In analyzing the clarity of definition and notice supplied by NRS 465.015 as applied to "handle popping," we also recognize that statutes providing criminal sanctions must reflect a higher standard of certainty than civil statutes. Winters v. New York, 333 U.S. 507, 515 (1948).

This court has previously declared NRS 465.015 constitutionally acceptable on its face and as applied to the practice of "card crimping." Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983). However, we have never had the occasion to consider the constitutional validity of NRS 465.015 *as applied* to the practice of "handle popping" or handle manipulation of a slot machine. We are constrained to do so now, as the State has seen fit to use handle manipulation as a basis for charging Lyons with the commission of a felony, thereby inducing him to plead to a crime not committed, but otherwise free of controversy.

As previously noted in *Harriss,* persons are deemed to have been given fair notice of a criminal offense if the statutorily proscribed conduct has been described with sufficient clarity to be understood by individuals of ordinary intelligence. 347 U.S. at 617. *See also* United States v. Hogue, 752 F.2d 1503, 1504 (9th Cir. 1985). And statutes challenged for vagueness are evaluated on an as-applied basis where, as here, first amendment interests are not implicated. Maynard v. Cartwright, 108 S.Ct. 1853, 1858 (1988).

Turning now to an analysis of NRS 465.015 as applied to "handle popping," it will be seen that the statute fails to address such conduct in terms that would alert persons of ordinary intelligence that they were committing a crime.

The obvious purpose of NRS 465.015 is to prevent persons

from taking unlawful advantage of Nevada's gaming industry by cheating. In specific terms, the statute declares:

 1. "Cheat" means to alter the selection of criteria which determine:

 (a) The result of a game; or

 (b) The amount or frequency of payment in a game. . . .

The statute thus addresses knowing, purposeful, unlawful conduct designed to alter the criteria that determines the outcome of any lawful gambling activity. Thus, in *Martin,* we held that the statute had clear application to one who attempted to enhance his chances of winning by crimping cards. Having thus made it possible to identify certain cards, Martin was able to supplant elements of chance with actual knowledge that substantially altered both the nature of the game and the criteria for winning. The statute clearly proscribed such conduct. Similarly, those who, by resorting to mirrors, confederates, electronic equipment, magnets, tools or other devices, alter the play of a game or machine to increase their prospects of winning, would have no difficulty understanding that they are cheating within the definition of the statute.

In contrast, consider the gaming patrons who are specially gifted and can increase the odds in their favor by "card counting." Or perhaps the patron who notices and takes advantage of a dealer's habit of play that will occasionally provide an unintended view of the dealer's cards. Unquestionably, neither category of patron would be subject to prosecution under the statute, although casino management may take measures to deny them the right to play. In both cases, the players simply exploit what their skills and the play of the game will afford them. Any yet, they are altering the *usual* criteria, i.e., the characteristic complex or standard of play that determines the frequency of payment.

Because handle popping neither damages nor mechanically alters a slot machine, the innocent novice may "stumble across" the technique and use it as effectively as the professional who adroitly identifies and depletes the mechanically deficient machines.[3] *See* El Dorado Hotel, Inc. v. Brown, 100 Nev. 622,

---

[3]At Lyons' preliminary hearing, a percipient witness described Lyons' play as pulling the handle slowly down about two-thirds of the way with his right hand and then hitting it "very slightly" with his left hand. By this method, Lyons was able to cause both the first and second reels of the slot machine to remain stationary with two consecutive pulls of the handle; only an additional insertion of coins intervened between the first pull of the handle, which held the first reel, and the second pull, which held the second reel as well. By this method of play, Lyons was able to greatly increase his prospects of winning. Interestingly, in *El Dorado Hotel,* a Nevada Gaming Control Board agent testified that no person would be subject to arrest under Nevada law if he or she continued to play a slot machine that malfunctioned to the player's advantage under a "normal" pull of the handle. There is no Nevada statute or regulation defining a "normal" pull.

633, 691 P.2d 436, 444 (1984) (STEFFEN, J., dissenting). Players engaging in handle manipulation do nothing more than take advantage of what the slot machines will give them, just as card players may exploit a dealer's unintended revelation of his cards. In a sense, slot machine handle manipulators are analogous to all slot machine patrons who shuffle from machine to machine and casino to casino in the hope of favorably changing their luck. In the one case, such hope is manifested by varying the motion by which the handle is pulled; in the other, by a move to another machine or environment. In either case, the desire is to somehow change the odds in favor of the player.

In Sheriff v. Martin, 99 Nev. at 341, 662 P.2d at 638, we recognized the requirement of fraudulent intent as an element of cheating. Moreover, we also observed that "the attributes of the game—its established physical characteristics and basic rules—determine the probabilities of the game's various possible outcomes. Changing those attributes to affect those probabilities is a criminal act." Id.; 662 P.2d at 638. Games in the form of slot machines have established physical characteristics that are not altered by handle popping. Furthermore, we are unaware of any rules, written or otherwise, directing slot machine patrons to pull the handles in a specific manner. Certain gaming sophisticates—such as Lyons—would undoubtedly manipulate handles with a form of scienter because of their awareness that the procedure forms a basis for criminal prosecution in Nevada. Others, like Coolidge Brown (see El Dorado v. Brown), who stumble across a more favorable method of play, will handle pop without an intent to cheat or defraud. It is clear, however, that crime categories do not materialize or disappear on an ad hoc basis because of the presence or absence of scienter. Public offenses are defined by statute, ordinance or the common law. See NRS 193.050.

Because varying the pull of a slot machine handle has never been expressly proscribed by Nevada statute or ordinance or the common law of England, the status of handle popping as a public offense is entirely dependent upon its fair inclusion in the language of NRS 465.015. Fairly read, we do not perceive a description of handle popping within the statutory language. The physical characteristics and potential pay offs of slot machines are not altered by handle manipulators. They are, therefore, similar to card counters who, without altering the physical characteristics or payment potential of card games do, by their skillful play, increase the frequency of payments. Such activities do not constitute criminal conduct under existing law in Nevada.

The dissenting opinion concludes that Lyons has entered a plea of guilty that vitiates his right to complain of events preceding the plea. Moreover, the dissent would hold Lyons to his plea because he thereby avoided facing "one to ten years imprisonment for the

cheating at gambling offense, and either life with or without the possibility of parole on the habitual criminal offense." Our dissenting brethren then conclude that having received the benefit of the State's dismissal of the greater charges, Lyons should content himself with the benefit of his bargain, i.e., "only a five year sentence."

With due respect to our dissenting colleagues, a five-year prison sentence arising out of conduct that is lawful is hardly a bargain. Because there was no constitutional basis for prosecuting Lyons as a result of his handle popping activities, Lyons received no consideration whatsoever in exchange for his *Alford* plea to a crime he did not commit. It would be an affront to justice and due process to hold Lyons to his plea when the conduct upon which the plea was entered did not occur and when the underlying conduct upon which the original charges were based was not criminal.

Our reading of *North Carolina v. Alford* also leads us to conclude that the judgment of conviction entered pursuant to Lyons' plea was constitutionally infirm. In *Alford,* the Court held that a plea containing a protestation of innocence was constitutionally acceptable when "a defendant intelligently concludes that his interests require entry of a guilty plea *and the record before the judge contains strong evidence of actual guilt."* 400 U.S. at 37 (emphasis added). In the instant case, there was, of course, no evidence of actual guilt of the crime of attempting to obtain money by false pretenses, as the sentencing judge and the State knew Lyons had no involvement in such a crime. Moreover, because we have now held that handle popping a slot machine is not a criminal act in Nevada, it is clear that no evidence of actual guilt existed on any underlying criminal conduct that may have justified accepting Lyons' plea. We therefore hold that Lyons did not waive his right to complain of the acceptance of an unconstitutional plea.

If the State and the gaming industry desire to make handle popping or handle manipulation of slot machines a crime in Nevada, it will be necessary to do so in clearly expressed, specific statutory terms. Moreover, given the fact that innocent, well-intentioned patrons may so easily adopt various methods of handle manipulation in an attempt to change their fortune, it will be necessary to provide conspicuous notices on or about the machines to inform patrons which methods of handle pulling are lawful and which methods are felonious. In lieu of criminal sanctions, it should be apparent that gaming establishments will be able to curtail handle popping losses by promptly retiring and repairing or replacing machines vulnerable to such manipulation.

For the reasons stated above, we hold that NRS 465.015 is

unconstitutional as applied to handle popping or handle manipulation of slot machines that does not damage the machines. Accordingly, the judgment of conviction entered pursuant to Lyons' *Alford* plea is vacated, and if Lyons remains in custody pursuant to the instant conviction, he is to be released immediately.[5]

SPRINGER, J., and ZENOFF, SR. J., concur.

MOWBRAY, J., with whom YOUNG, C. J., agrees, dissenting:

Respectfully, I dissent.

The bottom line issue in this appeal is whether Nevada's anti-cheating statute, NRS 465.015,[1] is unconstitutionally vague as applied to slot machine manipulation commonly called "cheating by handle popping." My learned brethren of the majority have held the statute constitutionally infirm because it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute; or that a reasonable man of ordinary intelligence would not understand that slot machine handle popping was proscribed. I disagree.

It is difficult to draft a definition to cover all cases of cheating in the gaming industry. The legislature in its wisdom has come forward with the best possible definition that covers the problem, a definition that can be understood by those who wish to understand it.

NRS 465.015 is not a trap for the unwary, uninitiated novice who seeks to play the slots. I do not believe it is necessary at this juncture to post in blueprint detail in and about and around the slot machines warnings to the uninformed neophytes how to pull the handle of a slot machine. However, the professional "popper," as in the instant case, comes to the casino well trained in how to jerk, wrench, wrack and otherwise abuse the slot machines in order to alter the "selection of the criteria" proscribed in NRS 465.015.[2]

---

[5]THE HONORABLE DAVID ZENOFF, Senior Justice, participated in this appeal in the place of then Chief Justice E. M. GUNDERSON, pursuant to this court's general order of assignment filed September 14, 1988.

[1]NRS 465.015, provides in relevant part:

   1. "Cheat" means to alter the selection of criteria which determine:
   (a) The result of a game; or
   (b) The amount of frequency of payment in a game.

[2]Mr. Lyons, the appellant, has incurred at least seven arrests in Nevada and one arrest in New Jersey for slot machine cheating. He was indicted by a grand jury in Clark County, Nevada for (1) racketeering, (2) conspiracy to manufacture methamphetamines, (3) possession of ephedrine for sale, (4) attempt to manufacture methamphetamine, (5) trafficking in methamphetamine, and (6) possession of cocaine.

The Nevada Gaming Commission has entered Mr. Lyons' name in their

I conclude that people of ordinary intelligence would understand that a method of play which permits only one reel of a slot machine to spin as the "popper" does alter the selection of criteria which determines the result of the game. Therefore, I would hold NRS 465.015 constitutional in the instant case.

Lyons was charged with (1) cheating at gambling, (2) conspiracy to cheat at gambling, and (3) being an habitual criminal. After his preliminary hearing, Lyons assented to a plea bargain that allowed him to enter an *Alford* plea to the crime of obtaining money under false pretenses. All remaining charges were dropped by the State.

It is my opinion that Lyons was dealt with lightly. He should have been held to the original charges. He is an habitual criminal and deserves to be behind bars.

Lyons now seeks reversal of the one charge to which he pleaded guilty: obtaining money under false pretenses.

The record shows that Lyons made a knowing and intelligent choice when he pleaded guilty to obtaining money under false pretenses in order to avoid the possibility of a harsher penalty. North Carolina v. Alford, 400 U.S. 25 (1970); Tiger v. State, 98 Nev. 555, 654 P.2d 1031 (1982). Lyons faced one to ten years imprisonment for the cheating at gambling offense, and either life with or without the possibility of parole on the habitual criminal charge. *See* NRS 207.010(2); NRS 465.088(1)(b). In return for pleading guilty to the false pretense offense, the State of Nevada dropped the cheating and habitual criminal charge. Lyons received a five year sentence. Because Lyons knowingly and willingly made his bargain and received the benefit therefrom, I would not reverse. Therefore, I would affirm Lyons' judgment of conviction.

---

"Black Book" excluding him from licensed gaming establishments in the State of Nevada. The Commission noted therein that "[o]ver the past 35 years there have been few time periods when Lyons was not either a fugitive from justice, facing criminal prosecution, or incarcerated in a correctional facility. He has been arrested in excess of thirty (30) times, and has numerous felony and misdemeanor convictions."