TIMOTHY JOHN CHILDS, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 21373

September 6, 1991                                    816 P.2d 1079

*David Parraguirre,* Public Defender, *Karen Grifall,* Deputy Public Defender, and *Jane G. McKenna,* Deputy Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Dorothy Nash Holmes,* District Attorney and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, Young, J.:

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of cheating at gambling and one count of burglary. Appellant's convictions stem from his activities in John Ascuaga's Nugget in Sparks, Nevada, on December 10, 1989. Karen M. Fleiner, an operations manager for the casino, testified at trial that she observed appellant through a monitor as he played a slot machine. Fleiner saw appellant jerk on the handle of the slot machine in such a way that one of the three reels would

stop spinning prematurely. As soon as she observed this "handle popping," Fleiner called the Gaming Control Board.

Agent Robert Johnson arrived at the casino in response to Fleiner's call. Agent Johnson watched appellant directly for approximately five minutes and did not see any use of the slot machine which Agent Johnson considered illegal. Agent Johnson then observed appellant through the monitor and saw appellant "freeze the reels" several times.

The jury found appellant guilty of one count of cheating at gambling and one count of burglary. NRS 465.070(7), 205.060. The district court sentenced appellant to serve two concurrent terms of six years in the Nevada State Prison. On appeal, appellant contends that NRS 465.070(7) is unconstitutionally vague and therefore asks this court to reverse his convictions.

In 1989, this court addressed the issue of whether NRS 465.015 was unconstitutionally vague as applied to handle popping.[1] Lyons v. State, 105 Nev. 317, 775 P.2d 219 (1989). This court set forth the standard to be applied as follows:

> As previously noted in *Harriss* [United States v. Harriss, 347 U.S. 612 (1954)], persons are deemed to have been given fair notice of a criminal offense if the statutorily proscribed conduct has been described with sufficient clarity to be understood by individuals of ordinary intelligence. 347 U.S. at 617. *See also* United States v. Hogue, 752 F.2d 1503, 1504 (9th Cir. 1985). And statutes challenged for vagueness are evaluated on an as-applied basis where, as here, first amendment interests are not implicated. Maynard v. Cartwright, 108 S.Ct. 1853, 1858 (1988).

*Lyons* 105 Nev. at 320, 775 P.2d at 221.

Applying this standard to NRS 465.015, this court first determined that the statute was intended to prevent "knowing, purposeful, unlawful conduct designed to alter the criteria that determines the outcome of any lawful gambling activity." *Lyons,* 105 Nev. at 321, 775 P.2d at 221. As an example of this type of activity, we mentioned card crimping, which we had previously held to be prohibited by NRS 465.015. *See* Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983). We stated that card crimping, like the use of special tools or devices, constituted cheating because it alters "both the nature of the game and the criteria for winning." *Lyons,* 105 Nev. at 321, 775 P.2d at 221.

---

[1] NRS 465.015 provides in pertinent part:

As used in this chapter:
1. "Cheat" means to alter the selection of criteria which determine:
(a) The result of a game; or
(b) The amount or frequency of payment in a game.

In contrast to these activities, we discussed card counting and taking advantage of a dealer's unintentional revelation of his cards. Concluding that neither act violated NRS 465.015, we stated:

> In both cases, the players simply exploit what their skills and the play of the game will afford them. And yet, they are altering the *usual* criteria, i.e., the characteristic complex or standard of play that determines the frequency of payment.

*Id.* Noting that handle popping "neither damages nor mechanically alters a slot machine," this court emphasized that an innocent novice could stumble across the technique and use it just as effectively as a professional. *Id.* Analogizing the slot machine manipulator to a person who takes advantage of a dealer's unintentional revelation of his cards, we concluded that slot machine handle manipulators simply take advantage of what the slot machines give them. Handle manipulation, we concluded, does not alter the "physical characteristics and potential pay offs of slot machines." *Lyons,* 105 Nev. at 322, 775 P.2d at 222.

Next, we discussed the element of intent, reviewing our previous comments on the subject in Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983), in which we recognized fraudulent intent as an element of cheating under NRS 465.015. Continuing our discussion of *Sheriff v. Martin,* we stated:

> Moreover, we also observed that "the attributes of the game—its established physical characteristics and basic rules—determine the probabilities of the game's various possible outcomes. Changing those attributes to affect those probabilities is a criminal act." [99 Nev. at 341]; 662 P.2d at 638. *Games in the form of slot machines have established physical characteristics that are not altered by handle popping.* Furthermore, we are unaware of any rules, written or otherwise, directing slot machine patrons to pull the handles in a specific manner. Certain gaming sophisticates—such as Lyons—would undoubtedly manipulate handles with a form of scienter because of their awareness that the procedure forms a basis for criminal prosecution in Nevada. Others . . . who stumble across a more favorable method of play, will handle pop without an intent to cheat or defraud. It is clear however, that crime categories do not materialize or disappear on an ad hoc basis because of the presence or absence of scienter. Public offenses are defined by statute, ordinance or the common law. *See* NRS 193.050.

*Lyons,* 105 Nev. at 322, 775 P.2d at 222 (emphasis added).

In apparent response to our decision in *Lyons,* the legislature

amended NRS 465.070 to add subsection 7.[2] NRS 465.070 provides in pertinent part:

It is unlawful for any person:

. . . .

7. To manipulate, with the intent to cheat, any component of a gaming device in a manner contrary to the designed and normal operational purpose for the component, including, but not limited to, varying the pull of the handle of a slot machine, with knowledge that the manipulation affects the outcome of the game or with knowledge of any event that affects the outcome of the game.

Appellant contends that NRS 465.070(7) is unconstitutionally vague under both a notice and an arbitrary enforcement analysis. *See* Grayned v. City of Rockford, 408 U.S. 104, 108-109 (1972) (a law is vague if it fails to give fair notice of the conduct proscribed or fails to provide explicit standards for those who enforce it, thereby allowing arbitrary and discriminatory enforcement). Quoting this court's directive in *Lyons*, appellant claims specifically that NRS 465.070(7) does not describe the prohibited acts in "clearly expressed, specific" terms, and notes that there is still no Nevada statute or regulation defining a "normal" pull of a slot machine handle.

Statutes are presumed to be valid, and the burden is on the challenger to make a clear showing of their unconstitutionality. Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983).

The concerns we expressed in *Lyons* have not been resolved by the creation of NRS 465.070(7). First, while NRS 465.070(7) forbids "manipulat[ion] with the intent to cheat," "cheating" is still defined by NRS 465.015. We held in *Lyons*, however, that handle manipulation does not alter "the physical characteristics and potential pay offs of slot machines," and therefore does not constitute cheating under NRS 465.015. *Lyons,* 105 Nev. at 322, 775 P.2d at 222. Thus appellant, in pulling the slot machine handle in a way that did not damage the machine, could not have cheated.

Next, although NRS 465.070(7) prohibits "varying the pull" of a slot machine handle, it does not provide a definition of a "normal" pull from which a player must not vary. The statute therefore left appellant to guess at the lawful method of pulling a slot machine handle. *See Harriss,* 347 U.S. at 617. The vague-

---

[2]The decision in *Lyons* was filed June 1, 1989. The bill creating the amendment to NRS 465.070 was enacted June 28, 1989.

ness of the statute was not cured by the fact that when appellant pulled the handle on the slot machine, he intended to do as well as he could. Obviously, such an intention would be shared by any player, whether professional or novice. As we explained in *Lyons*, the existence of such an intent is not criminal. Indeed, any discussion of intent is meaningless without a statutory definition of the proscribed conduct. Here, because the proscribed conduct was defined only as varying from an undefined norm, no such statutory definition existed. As we stated in *Lyons:*

> If the State and the gaming industry desire to make handle popping or handle manipulation of slot machines a crime in Nevada, it will be necessary to do so in clearly expressed, specific statutory terms. Moreover, given the fact that innocent, well-intentioned patrons may so easily adopt various methods of handle manipulation in an attempt to change their fortune, it will be necessary to provide conspicuous notices on or about the machines to inform patrons which methods of handle pulling are lawful and which methods are felonious.

*Lyons,* 105 Nev. at 323, 775 P.2d at 223.

Accordingly, we reverse appellant's judgment of conviction.

MOWBRAY, C. J., STEFFEN, J., and BONAVENTURE, D. J., concur.[3]

SPRINGER, J., dissenting:

The statute under which Childs stands convicted declares it to be unlawful to "manipulate, with the intent to cheat, any component of a gaming device in a manner contrary to the designed or normal operational purpose . . . ." There is ample evidence to convict Childs of a cheating manipulation of a slot machine.

Childs was observed, as put in the majority opinion, to "jerk the handle of the slot machine in such a way that one of the three reels would stop spinning prematurely." This activity would, as I see it, be to "manipulate" a component (one of the three reels) in a manner contrary to the reel's designed and normal purpose. If a "jerk" or other violent manipulation of a slot machine handle can cause one reel to stop "prematurely," that is to say, "before the proper or usual time" (Webster's Ninth New Collegiate Dictionary 928 (1985)), then I think the "jerker" is cheating. This kind of activity is not an exercise in "skill," to borrow a word employed in *Lyons* but, rather, a conscious effort to disrupt the "proper or usual" operation of the machine. The design of a

---

[3]The Honorable Joseph T. Bonaventure, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE ROBERT E. ROSE, Justice. Nev. Const. art. 6 § 4.

slot machine contemplates unobstructed, random, serial rotation of three reels. When a person interferes with the machine's "operational purpose" by pushing, striking, jerking or other untoward physical insult to the machine which interferes with the machine's normal operation, I consider this to be a "manipulation" which, when accompanied by a fraudulent intent, constitutes a crime under NRS Chapter 465. I do not like to declare statutes to be unconstitutional. I would uphold the conviction.