Springer, J.,
dissenting:
I refuse to join in an opinion which would overrule Childs v. State, 107 Nev. 584, 816 P.2d 1079 (1991) (“Childs I”), a case which is only two years old. I disagreed with the previous Childs’ case and registered my dissent. Once, however, that it became the law of this state, I must accept it as the law; and it is, of course, bad practice to overrule a case that has been in effect for such a short time. I am prepared to accept the adjudication of this court that the statute in question is unconstitutionally vague; nevertheless, I conclude that it is not vague when applied to the facts of this case. Childs, a professional slot machine cheat, was clearly cheating and acting in violation of NRS 465.070(7), and the conviction must be upheld.
Appellant Childs stands convicted of two felonies, both involving the cheating of slot machines. The first conviction is on an information charging “Attempted Fraudulent Slot Machine Manipulation,” committed on January 7, 1990, at Bill’s Casino at Lake Tahoe. The second conviction is based on an information charging “Fraudulent Slot Machine Manipulation,” committed on January 8, 1990, at the High Sierra Casino, also at Lake Tahoe. Because Childs clearly attempted to manipulate a slot machine fraudulently at Bill’s Casino on January 7 and because he clearly did manipulate a slot machine fraudulently at the High Sierra Casino on January 8, I would uphold both convictions.
There was no evidence introduced at trial. The parties stipulated that the case “be tried to the court without a jury” and that “the evidence presented at trial shall consist of the transcript of the preliminary hearing and nothing else.”
To put the facts of these two convictions into proper context, it is helpful to analyze, early on, the criminal statute upon which the convictions are based. NRS 465.070(7) is set out in a footnote to the Plurality Opinion. Breaking the statute into its elements, it was unlawful for Childs:
1. To “manipulate” the handle of a slot machine “in a manner contrary to the designed and normal operational purpose”;
2. “[WJith the intent to cheat”; and
*1054 3. “[W]ith knowledge that the manipulation affects the outcome of the game.” NRS 465.070(7).
To be guilty of violation of this statute, Childs must have, with fraudulent intent, manipulated a slot machine handle in a manner contrary to its designed and normal purpose, with knowledge that his manipulation of the machine was going to change the designed and normal outcome of slot machine play. In the context of Childs’ present criminal involvement, it appears to me that each of the elements of this statutory crime have been established.
I.

Attempted Fraudulent Slot Machine Operation Bill’s Casino

The transcript of the preliminary hearing upon which this conviction is based shows that a security officer on duty at Bill’s Casino on January 7, 1990, had occasion to observe Childs in the act of “obviously manipulating the reels.” (Emphasis added.) The officer watched Childs “pulling the handle and causing one of the reels not to spin.” The manner in which Childs caused one of the reels not to spin was to pull the handle down “a little bit” and then to give it “a little pop, [a] little jerking motion.” The officer testified without objection that a slot machine is not designed to have a handle pulled in that manner, that is to say, in the manner in which Childs was observed to be manipulating the machine. The officer observed that this manipulation resulted in Childs’ winning money from the machine. The officer also observed that Childs was putting the money into his pocket immediately instead of leaving it in the tray; the officer considered this to be “unusual behavior” and said, “You don’t see it too often.”
Stating the obvious, the security officer testified that the reels are supposed to spin. Indeed, they are. When the wheels can be manipulated so that they do not spin, the slot machine “handle-popper”[1] is advantaged in at least two ways. As the security officer explained, one way is to keep a reel from spinning, holding it in the win position on a pay symbol such as a cherry. This creates a no-lose mode for the machine in which the machine “pays on cherries[;] it would pay constantly if you can get it not to spin.” The witness also testified that another method of cheating is to hold the third reel so it won’t spin, with a jackpot bar in the win position; and, if “it won’t spin, you’ve got a *1055 considerable more better odds of getting three bars.” There can be no question in my mind that this activity is cheating and that it is a clear and understandable violation of the statute in question.
II.

Fraudulent Slot Machine Manipulation High Sierra Casino

Stephen Wegmann, a surveillance agent for the High Sierra Casino, a man trained in detecting cheating techniques by slot machine cheaters, described Childs’ activities at the High Sierra. Wegmann saw Childs’ way of manipulating the slot machine handle as first “slow moving and then a slam at the bottom, and the first reel held, the cherry stayed there, and then he received a pay off for that.” Wegmann gave a very precise explanation of what is “wrong with playing the slot machine in that manner.” Wegmann explained:
Normally, it’s a random selection. The reels, all the reels fire, and they turn and random spin, and then the — by a clock timer inside ... it could stop them anywhere. So you’re taking a chance of winning or not winning. But when . . . you hold it, there’s no chance of not winning. You’re going to win all the time.
Childs it appears, was manipulating a slot machine, plainly and simply, so that he could “win all the time.” This is called “cheating”; slot machine players are not supposed to cheat in order to win all the time.
This is not a difficult case. Childs was not an ordinary slot machine player. There is more than ample evidence to support the trial judge’s almost inescapable conclusion that Childs was “manipulating” the slot machines at the mentioned casinos with the fraudulent or cheating intent of “winning all the time.” Slot machines are designed, as pointed out by Wegmann, to be played in a manner in which the three reels are allowed to spin freely and then be stopped by a timing device in random fashion. When a player intentionally interferes with this randomness, such a player is clearly manipulating the machine “in a manner contrary to the designed and normal operational purpose” of a slot machine. The designed and normal operation purpose is, as Wegmann described, to pay or not to pay in accordance with the random spinning of three reels. Childs was rather clearly intentionally violating and interfering with this normal purpose.
When one reviews the enumerated elements of the crime set out above, the following comes to light:
1. Childs did “manipulate” the machines’ handles “in a manner contrary to the designed and operational purpose.” *1056 A slot machine is not designed to let the player win every time or even to give the manipulating player an advantage above that created by the random spin of three reels.
2. There is ample evidence of Childs’ “intent to cheat.”[2] It is clear that Childs was cheating in the ordinary sense of the word. He simply was not playing by the rules. Some of the time, at least, he could not lose.
3. Childs certainly had knowledge that what he was doing affected the outcome of his slot machine manipulation. He could not manipulate these machines without intending and knowing that he was going to profit by these activities.
All three necessary elements of the statute are well-established with reference to his activities at Bill’s Casino and at the High Sierra Casino. Childs is clearly guilty of both charges.
As said, this is not a difficult case, not difficult, that is, until we collide with the case of Childs v. State, 107 Nev. 584, 587, 816 P.2d 1079, 1081 (1991), in which, without expressly declaring the statute in question to be unconstitutional, we ruled that, under the circumstances of that case, the resourceful and redoubtable Childs could not have understood from the statutory language just what a “‘normal’ pull” was and that he had “to guess at the lawful method of pulling a slot machine handle.” Well, maybe in Childs 1, Childs had to guess as to whether his handle-popping activities at the Nugget were “lawful” or not; but he did not have to guess in the present case. He knew he could not lose. Anyone who plays a game of chance, a game based on random selection, who knows that he cannot lose, and cannot, in fact, lose, can probably be safely called a cheater. In Childs I, all we knew about Childs was that he would “jerk” the handle, that “one of the three reels would stop spinning prematurely” and that Childs was able to “‘freeze the reels’ several times.” 107 Nev. at 584-85, 816 P.2d at 1079. It may be within the realm of possibility that an honest player might “jerk” a slot machine handle with the result that one or more of the reels might “freeze” from time to time and that during an honest player’s play, for one reason or another, a reel might “stop prematurely”; but we know that a player who deliberately “manipulates” a machine to the extent that pay-out is guaranteed on every play is not playing in accord- *1057 anee with machine design and normal operation. We know that such a player is cheating, as was Childs.
The concern in Childs I was that unwary, innocent slot machine players might find themselves in trouble with the law because there is no description in the statute as to just what kind of handle jerking or slapping or other handle movement constituted unlawful “popping.” Concern was expressed in Childs I about the apparent absence of a “statutory definition of the proscribed conduct.” 107 Nev. at 588, 816 P.2d at 1081. Childs has now done us the favor of providing definition to the proscribed conduct. We can now define the kind of handle manipulation that is unlawful as that which knowingly destroys the randomness of the slot machine operation. These machines are designed to operate randomly, and their normal operation requires random spinning of the reels. When a person, by “manipulating” a machine mechanically, intentionally impedes or destroys this randomness, that person is cheating. This is not at all the same kind of activity (discussed in Childs I) involved in counting cards in the game of “21.” In that game, properly shuffled cards come out randomly. There is a certain degree of skill involved in playing the game of “21,” and the memorization of previously-dealt cards may enhance the player’s chances of winning; but there is no defeating of the purpose or design of the game by engaging in the practice of card memorizing. It is true that players may believe that pulling slot machine handles slowly or rapidly may in some way give them an edge on the essential randomness of the machine. Certainly under the ruling which I propose, players could continue lawfully to pull slot machine handles at variable velocities. What players cannot lawfully do is intentionally abuse the machine so that the randomness of the spinning reels is interrupted, thereby either making winning a sure thing or increasing the player’s chances of winning in a manner that is “contrary to the designed and normal operational purpose” of the machine.
In Childs I, we mentioned that Lyons v. State, 105 Nev. 317, 322, 775 P.2d 219, 222 (1989), assumes that “handle manipulation does not alter ‘the physical characteristics and potential pay offs of slot machines.’ ” 107 Nev. at 587, 816 P.2d at 1081. From the record of the case before us, we now have a better and more complete understanding of what was going on, as to what Childs was really up to. We now know that Childs and others like him are quite capable of manipulating the handle of a slot machine in a way that physically guarantees success. Childs was clearly altering the machine’s mechanism in such a way as to prevent one or more of the reels from performing its normal function, namely that of spinning freely and randomly until the timing mechanism *1058 brings the reel to a random stop. A slot machine with a “frozen” reel is a slot machine with altered physical characteristics, characteristics changed by a skillful manipulator’s slow partial pull followed by a sudden “jerk” or “slap.” We learn from the record in the present case that handle manipulation can and does alter the potential pay-offs of slot machines. Under these circumstances, the statute loses the vagueness that was the concern of the court in Childs I. Childs is a cheater. He intended to “beat” the slot machines and was successful in doing so. The present case necessarily provides a better understanding of what these kinds of slot machine cheaters are up to. If one reel is frozen and fails, mechanically, to spin, the cheaters are altering the physical makeup of the machines and unfairly changing the pay-off, much in the favor of the cheater and contrary to the normal and designed payout of the machine.
As I see it, the way that Childs performed in this case, the way he manipulated the machines to his advantage, gives added meaning and understanding to the statute in question. Childs, and people who do what Childs did, are clearly violating the statute. I would, therefore, affirm the convictions.

“Handle-popper” is a well-known description of persons who cheat slot machines in the manner described by the security officer. The purpose of the jerking or “popping” is to cause a malfunction of one of the reels so that the handle popper can gain an advantage over the machine and over other players by the means explained in the text.

“Cheat,” by statute, means to alter the selection of criteria which determine the result of a game or the amount or frequency of payment in a game. NRS 465.015. Childs intended to and did alter the selection of criteria. The criteria for winning on a slot machine are selected at random by three reels, consecutively stopped by a timing device. Childs altered the selection of criteria and in doing so altered the result and the frequency of payment.