*1032 OPINION

Per Curiam:

Appellant Hubert Preston Skipper, Jr. was convicted of cheating at gaming pursuant to NRS 465.070(7) and NRS 465.083. For the reasons discussed below, the judgment of conviction is affirmed.

FACTS

The facts of record are brief and uncontested on appeal. While playing craps at two different gaming establishments in Reno, Skipper was videotaped throwing the dice in a manner that is colloquially referred to as “dice sliding.” As the term implies, dice sliding occurs when one or both of the dice slides down the table without tumbling or otherwise altering the number(s) preselected by the gambler to face upward. Dice sliding is a difficult manipulation because it requires both dexterity of the ring and pinkie fingers and the aid of an inattentive or collaborating craps dealer or, as here, an accomplice who is able to obscure the dealer’s view of play. The surveillance tapes admitted into evidence show that Skipper’s occasional attempts to slide a die (some of which were successful) were preceded by changes in his betting pattern and manner of throw. Additionally, Skipper refrained from such attempts whenever the floor boss was watching the game. More importantly, the tapes show that Skipper’s method of play was aided by a confederate who sought to block the dealer’s view of the sliding die.
*1033 Skipper presented no defense to the charges brought against him, choosing instead to challenge the constitutionality of the criminal statutes under which he was charged. The jury convicted Skipper of two counts of cheating at gaming and this appeal followed.

DISCUSSION

Skipper’s sole argument on appeal is that NRS 465.070(7) and NRS 465.083 are unconstitutionally vague because they fail to alert persons of ordinary intelligence that dice sliding constitutes criminal conduct. The Due Process Clause contained in the Fourteenth Amendment to the United States Constitution prohibits states from holding an individual “‘criminally responsible for conduct which he could not reasonably understand to be proscribed.’ ” Sheriff v. Martin, 99 Nev. 336, 339, 662 P.2d 634, 636 (1983) (quoting United States v. Harriss, 347 U.S. 612, 617-18 (1954)). However, the Due Process Clause does not require an impossible standard of specificity in our penal statutes, and we have earlier held that a statute will not be void for vagueness “if there are well settled and ordinarily understood meanings for the words employed when viewed in the context of the entire statutory provision.” Woofter v. O’Donnell, 91 Nev. 756, 762, 542 P.2d 1396, 1400 (1975); see also Sheriff v. Martin, 99 Nev. 336, 339, 662 P.2d 634, 636 (1983). Finally, legislation is presumptively constitutional and Skipper bears the burden of clearly demonstrating that the challenged statutes are invalid. Id. NRS 465.083 makes it unlawful for any person to “cheat” at any gambling game. NRS 465.015 defines “cheat” as “alter[ing] the selection of criteria” that determines either the “result of a game” or “the amount or frequency of payment in a game.”[1] We have previously concluded that NRS 465.083 and NRS 465.015 are constitutionally certain as they relate to card crimping, but unconstitutionally vague as they relate to slot machine handle manipulation (“handle popping”). Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983); Lyons v. State, 105 Nev. 317, 775 P.2d 219 (1989); see also Childs v. State, 107 Nev. 584, 816 P.2d *1034 1079 (1991); Childs v. State, 109 Nev. 1050, 864 P.2d 277 (1993).
In Sheriff v. Martin, 99 Nev. 336, 662 P.2d 634 (1983), Jesse Martin and an accomplice were playing blackjack at the same table when the accomplice was observed crimping cards and aiding Martin’s play. The two players were arrested and charged by criminal information with violating NRS 465.083. Id. at 338, 662 P.2d at 636. The district court dismissed the charges against Martin on grounds that the definition of cheating provided by NRS 465.015, on which NRS 465.083 rests, was unconstitutionally vague. After fully discussing the “void for vagueness” doctrine, we concluded that the statute was not vague as applied to Martin’s conduct:
In light of the statutory purpose, we interpret the current cheating statutes to proscribe the alteration of the group of characteristics which identify and define the game in question. The attributes of the game — its established physical characteristics and basic rules — determine the probabilities of the game’s various possible outcomes. Changing those attributes to affect those probabilities is a criminal act.
Thus, if a player or dealer deceitfully alters the identifying characteristics or attributes of a game with the intent to deprive another of money or property by affecting the otherwise established probabilities of the game’s various outcomes, he or she is guilty of cheating within the meaning of NRS 465.015 and NRS 465.083.
Id. at 341, 662 P.2d at 637-38.
In Lyons, the defendant was arrested for manipulating the handles of vulnerable slot machines. We noted that NRS 465.015 extends to “knowing, purposeful, unlawful conduct designed to alter the criteria that determines the outcome of any lawful gambling activity,” and thus proscribes, in addition to card crimping, the use of “mirrors, confederates, electronic equipment, magnets, tools or other devices.” We also concluded that gifted patrons who simply exploit their skills or play of the game (e.g., card counting or serendipitously observing the dealer’s cards) in hopes of altering the usual criteria of play do not run afoul of the statute. 105 Nev. at 321, 775 P.2d at 221. We then held that handle popping, which neither damages nor mechanically alters a slot machine, and which is discoverable by an innocent novice, is within the latter category.
Skipper assumes, without meaningful discussion, that Lyons and its progeny limit our holding in Martin and control the *1035 disposition of this case. We are constrained to disagree because of the expressly narrow application of Lyons and the distinct differences between handle popping and die sliding. A “handle popper” alters no mechanism in the machine, and merely adopts a handle pulling methodology that summons the best advantages to the player that the mechanical conditions of the slot machine will provide. On the other hand, a dice slider uses a methodology of play that is based upon a purposefully orchestrated combination of factors designed to change the nature of play through affirmative acts of cheating and deception. For example, as noted above, Skipper utilized an accomplice to obscure the dealer’s vision of the table while Skipper purposely engaged in sliding the dice.
The game of craps understandably involves players who throw the dice in accordance with the rules of play. The rules of play require the “roll” of the dice, thus resulting in the dice either tumbling or bouncing off the end of the table as a result of the player’s throw. The evidence adduced at trial indicated that craps dealers are trained to call a “no roll” unless the dice are thrown in the manner described. Thus players who may accidently slide the dice simply have their play nullified by the dealer’s call. Skipper, however, sought to prevent the dealer from detecting and invalidating his method of play by utilizing a confederate to obscure the dealer’s vision. In effect, Skipper was blindfolding the dealer while placing the dice on the table in a winning combination. This method of altering the elements of chance clearly constitutes cheating. Innocent players would not engage in this type of deceptive, manipulated play.
NRS 465.083 and NRS 465.015 have clear and certain application to those who attempt to supplant elements of chance with surreptitious conduct that alters both the nature of the game and the criteria for winning. A skilled dice slider such as Skipper, surreptitiously and contrary to the rules of the game, alters the probable outcome of a throw and drastically increases the chances of winning certain types of bets on the craps table. [Headnote 4]
According to the standard of law enunciated in Martin, Skipper is guilty of cheating within the meaning of NRS 465.015 and NRS 465.083. Skipper deceitfully altered an integral attribute of the game in affecting the otherwise established probabilities of its various outcomes. However, unlike the dice slider, a “handle popper” does not alter the physical characteristics of the game (slot machine) or violate any established or defined rule of play.[2] See Lyons, 105 Nev. at 322, 775 P.2d at 222.
*1036 Finally, we conclude that persons of average intelligence who play the game of craps in Nevada will have no difficulty understanding that a surreptitious manipulation of the dice contrary to the rules of the game, in order to alter its outcome, constitutes an act of cheating as defined in NRS 465.015 and proscribed as a criminal act under NRS 465.083. In light of our ruling, it is unnecessary to discuss the application of NRS 465.070(7)[3] to the instant case.
For the reasons discussed above, the judgments of conviction entered by the district court are affirmed.[4]

 NRS 465.015 provides, in Ml, as follows:
As used in this chapter:
1. “Cheat” means to alter the elements of chance, method of selection or criteria which determine:
(a) The result of a game;
(b) The amount or frequency of payment in a game; or
(c) The value of a wagering instrument approved by the state gaming control board for use in connection with a cashless wagering system.
2. The words and terms defined in chapter 463 of NRS have the meanings ascribed to them in that chapter.

 In Childs v. State, 107 Nev. 584, 816 P.2d 1079 (1991), we held that a new provision, NRS 465.070(7), that purported to make unlawful “varying the pull” of a slot machine handle was unconstitutionally vague because the *1036 new subsection did “not provide a definition of a ‘normal’ pull from which a player must not vary.” Id. at 587, 816 P.2d at 1081.

NRS 465.070(7) provides in pertinent part:
It is unlawful for any person:
7. To manipulate, with the intent to cheat, any component of a gaming device in a manner contrary to the designed and normal operational purpose for the component . . . with knowledge that the manipulation affects the outcome of the game or with knowledge of any event that affects the outcome of the game.

The Honorable Robert E. Rose, Chief Justice, did not participate in the decision of this appeal.