[Cite as *State v. Bridge*, 2018-Ohio-166.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105510**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LONNIE L. BRIDGES

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-600431-A

**BEFORE:** E.A. Gallagher, A.J., McCormack, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** January 18, 2018

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
820 West Superior Ave., Suite 800
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Jonathan Block
        Mary M. Frey
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, A.J.:

{¶1} Defendant-appellant Lonnie Bridges appeals his convictions for gambling in the Cuyahoga County Court of Common Pleas. We affirm.

**Factual and Procedural Background**

{¶2} Bridges was charged with five counts of gambling in violation of R.C. 3772.99(E)(5) and three counts of gambling in violation of R.C. 3772.99(E)(7). The case proceeded to a jury trial where the following facts were adduced.

{¶3} On July 25, 2015, Bridges, Kenneth Young and a third unidentified male companion entered the Horseshoe Casino[1] in Cleveland, Ohio and gambled at the craps table designated as number 502. While gambling at table 502, the three men cumulatively won over $39,000, including $18,465 on their final roll. Jennifer Trnavsky, the table supervisor, became suspicious of the dice rolls being thrown by the men because the rolls appeared to be too low to the table. After Bridges threw the final winning roll, Trnavsky alerted her supervisor and casino surveillance because she was concerned the men might be sliding the dice.

{¶4} The actions of Bridges, Young and the unidentified male were brought to the attention of Agent Jason Slarb of the Ohio Casino Control Commission, a state regulatory authority that oversees the operation of the casinos in Ohio. Agent Slarb is a state law enforcement officer who is posted inside the casino and investigates gaming-related crimes.

---

[1]Since rebranded as the "Jack Cleveland Casino."

**{¶5}** Slarb described the technique of "sliding dice" as preemptively setting the dice to the number on which you want them to come to a stop and then throwing them in a manner such that they only spin horizontally with the desired number on top throughout the entire roll. Executed correctly, the dice do not rotate vertically or "tumble" but rather lands on the craps table and spins or "slides" to a stop with the desired number showing. This technique requires skill and, when executed successfully, the individual throwing the dice is able to spin the dice such that they result in the desired numbers for the thrower to win his wager.

**{¶6}** Sliding the dice, even when the thrower is only partially successful in that one of the dice spins and the other tumbles, drastically alters the element of chance in the game of craps because certain outcomes are eliminated and the odds of the desired outcome being produced are increased. When the thrower is completely successful in that he is able to spin both dice simultaneously, the thrower will have assured himself a winning wager through his manipulation of the dice. The walls of the craps table operate to force dice to tumble and a correct roll is required to strike the walls to ensure unpredictability. However, the testimony at trial established that table operators rarely call a "no roll" when the thrower fails to strike the walls. A dice slider aims for the dice to come to a stop short of the wall so as to ensure that the spun die does not tumble as a result of striking the wall. Even when a dice slider is only partially successful in that only one of the two dice slides as intended, other gamblers at the table can be harmed in that certain dice outcomes upon which they have wagered are rendered unobtainable.

**{¶7}** Slarb presented surveillance video of 26 different throws executed by Bridges, Young and their companion at table 502. Of the 26 throws presented to the jury, six of the throws appear to represent legitimate throws where the dice tumbled and/or intentionally struck the walls of the craps table generating a truly random result. Agent Slarb testified that it was a common practice for dice sliders to mix legitimate throws into their pattern to mask their sliding attempts.

**{¶8}** The remaining 20 throws were attempted slides of the dice with varying success. Of those 20 throws Bridges threw four times, Young six times and the third man ten times. Slarb testified that the three men were all constantly betting together based on each other's rolls at the table. The relevant bets were placed on specific outcomes such as "hard sixes" or "hard eights" that required the dice outcome to be double threes or double fours, respectively. Michael DePinto, a game shift manager at the casino, also testified that in his review of the surveillance footage the men would only place such bets when one of the three of them was rolling the dice as opposed to when an unaffiliated gambler at the table was rolling. In each of the 20 throws the surveillance video reflected, at a minimum, an attempt to slide one or both of the dice on a number consistent with the specific wagers the men had placed on the table.

**{¶9}** Agent Slarb testified that physical positioning of a player at the craps table is an important component to dice sliding. The ideal dice sliding location at the table is directly to the left of the "stick person" because the stick person is responsible for watching the roll of the dice. When positioned directly to the stick person's left, the

thrower is able to shorten the length of the table that the dice must travel, reducing the time for the stick person to view the dice. The surveillance video revealed that Bridges, Young and their companion repeatedly exchanged positions with one another to ensure that whichever of the three was throwing would always throw from the ideal dice-sliding position.

{¶10} In addition to showing the sliding rather than tumbling of the dice across the table, the surveillance footage also reflected the three men repeatedly and meticulously preparing the dice for their intended throw. When the stick man would use the stick to drag the dice to one of the men for them to pick up and throw, the thrower would routinely pick out a die that was already pre-positioned with the desired number showing or manipulate the dice on the table with his hand until they turned to such number. Only then would the thrower pick up the dice and begin his attempt to slide.

{¶11} Finally, Agent Slarb and Horseshoe casino personnel detailed distractionary techniques employed by the three men to occupy the attention of the table's dealers during the throws and minimize the opportunity of the dealers to view the sliding of the dice. These techniques included throwing in late wagers with chips and unnecessarily forcing the dealers to conduct cash transactions during rolls despite the ready availability of chips. The men also gave the dealers tips in the form of bets placed on their rolls that Agent Slarb identified as a technique used when a dice slider is concerned he might be detected and wants the dealer to ignore his sliding.

**{¶12}** The jury found Bridges guilty of all eight counts of gambling. The trial court imposed five years of community control on each count and ordered Bridges to pay restitution of $39,342.00 to the Horseshoe casino.

**Law and Analysis**

**I. Sufficiency**

**{¶13}** In his first assignment of error, Bridges challenges the sufficiency of the evidence supporting his convictions.

**{¶14}** A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387; *Jenks* at paragraph two of the syllabus.

**{¶15}** Bridges argues the state failed to present sufficient evidence of his convictions of gambling in violation of R.C. 3772.99(E)(5) and (7) because 1) the casino employees at the table were unable to recognize his throws as out of the ordinary and 2) he didn't know he was engaging in criminal activity.

**{¶16}** With respect to Bridges' first argument, he is correct that most of the casino employees failed to detect his sliding of the dice until the final roll when he and his companions won $18,465 and the table supervisor, Jennifer Trnavsky, alerted the casino to suspected cheating. The fact that Bridges and the other two men were skilled in hiding their manipulation of the dice does not undermine the sufficiency of the evidence presented by the state. The dice sliding in this case is very difficult to detect with the naked eye in real time. This is evidenced by the casino employees' failure to do so. However, with the benefit of frame by frame analysis of relevant surveillance footage the dice sliding efforts of the men become very obvious. Repeatedly, Bridges and the others can be seen loading up bets on a very specific outcome of the dice —  often double threes. Then the video depicts them meticulously presetting one or both of the dice to "3'' before releasing them in a manner that ensured one or both of the dice would spin across the table and remain a "3." A hindsight review of the surveillance footage leaves no ambiguity in what the men were trying to, and did in fact, accomplish.

**{¶17}** We further find no merit in Bridges' one sentence argument inferring that he didn't know he was engaging in criminal activity. R.C. 3772.99(E) provides in relevant part:

(E) A person who purposely or knowingly does any of the following commits a felony of the fifth degree on a first offense and a felony of the fourth degree for a subsequent offense. * * *

* * *

(5) Places, increases, or decreases a wager on the outcome of a casino game after acquiring knowledge that is not available to all players and concerns the outcome of the casino game that is the subject of the wager;

* * *

(7) Claims, collects, takes, or attempts to claim, collect, or take money or anything of value in or from a casino game with the intent to defraud or without having made a wager contingent on winning a casino game * * *.

R.C. 3772.99(E).

{¶18} Bridges' conduct in this case clearly satisfies the above definitions in that the surveillance video plainly reflects a deliberate effort by Bridges and his companions to covertly remove the element of chance from the game of craps to their own wagering benefit and to the detriment of both the casino and the other gamblers at the table. As the Supreme Court of Nevada explained, "a skilled dice slider * * * surreptitiously and contrary to the rules of the game, alters the probable outcome of a throw and drastically increases the chances of winning certain types of bets on the craps table." *Skipper v. State*, 110 Nev. 1031, 1035, 879 P.2d 732 (Nev. 1994). "[P]ersons of average intelligence who play the game of craps * * * will have no difficulty understanding that a surreptitious manipulation of the dice contrary to the rules of the game, in order to alter its outcome, constitutes an act of cheating." *Id*. at 1036.

{¶19} Bridges' first assignment of error is overruled.

**II. Manifest Weight**

{¶20} In his second assignment of error, Bridges argues that his convictions were against the manifest weight of the evidence.

{¶21} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997); *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence.

{¶22} "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of

witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin*, *supra*.

{¶23} For the same reasons addressed above, we find no merit to Bridges' manifest weight argument. The purposeful attempt to surreptitiously alter the element of chance in the craps game in the favor of Bridges and his companions was easily discernable from the surveillance video.

{¶24} Bridges' second assignment of error is overruled.

**III. Other Acts**

{¶25} In his third assignment of error, Bridges argues that the trial court erred by allowing the state to introduce the testimony of Thomas Miller. Miller was a gaming agent for the Ohio Casino Control Commission stationed at the Hollywood Columbus Casino in 2014. Miller testified that on March 10, 2014, he was alerted to an attempt by Bridges to slide dice on a craps table at that casino. Miller described a single roll wherein Bridges placed a bet for two "3s" to come up and successfully spun the dice to produce two "3s." The dealer called a "no roll" because the dice failed to touch the wall of the craps table. Miller testified that Bridges left the casino shortly thereafter.

{¶26} The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse

of discretion that has created material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). Within this broad discretion is the trial court's duty "to determine whether testimony is relevant and to balance its potential probative value against the danger of unfair prejudice." *State v. Clark*, 8th Dist. Cuyahoga No. 95928, 2011-Ohio-4109, ¶ 32. Evid.R. 402 allows the admission of any relevant evidence so long as the probative value of that evidence is not outweighed by its prejudicial effect, it does not confuse the issue or mislead the jury. Evid.R. 403(A). Our inquiry is limited to whether the trial court acted unreasonably, arbitrarily or unconscionably in deciding to include the testimony.

{¶27} Evid.R. 404(B) states that:

[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶28} The Ohio Supreme Court has set forth the following three-step analysis that should be used by trial courts when considering other-acts evidence:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶29}** We find no error in this instance. The state introduced Miller's testimony to establish Bridges' familiarity with the rules of the game of craps including the restriction against dice sliding as well as to establish absence of mistake in Bridges' conduct at the table. Miller's testimony was relevant and presented for a legitimate purpose under Evid.R. 404(B).

**{¶30}** Arguably Miller's testimony was superfluous because, as the Supreme Court of Nevada explained in *Skipper*, the surreptitious manipulation of the dice to remove the element of chance from the game of craps would be a patently identifiable act of cheating to any person of reasonable intelligence contemplating such action. However, even if the record could be construed to constitute a violation of Evid.R. 404(B) we find any error in the admission of Miller's testimony to be harmless pursuant to Crim.R. 52(A). *State v. Mims*, 8th Dist. Cuyahoga No. 100520, 2014-Ohio-5338, ¶ 60; *State v. Bell*, 8th Dist. Cuyahoga No. 97123, 2012-Ohio-2624, ¶ 59. The intent and execution of Bridges' scheme to meticulously and covertly alter the odds of the game of craps in his favor and against both the casino and other patrons at the table was unmistakable from the surveillance footage. The introduction of Miller's testimony was harmless error at most.

**{¶31}** Bridges' third assignment of error is overruled.

**{¶32}** The judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

TIM McCORMACK, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR